OPINION OF THE COURT
Simons, J.
Plaintiff brought this action against defendant MASP Equipment Corporation to recover possession of a 60-foot wide driveway easement acquired in 1969 by grant from Hunts Point Industrial Park, Inc. to plaintiff’s predecessor in interest, Penn Central Transportation Company. The easement crosses land leased by MASP and provides access from 149th Street to plaintiff’s land in the Hunts Point Industrial Park area of New York City.
Plaintiff recovered a judgment in Supreme Court, Bronx County, which granted it immediate possession of the drive *38 way easement, a mandatory injunction directing MASP to remove all fencing, equipment and materials obstructing its use of the easement, and a permanent injunction enjoining MASP from encroaching on plaintiffs property. The court ordered that all obstructions be removed within 45 days of the entry of judgment, and ruled further that a penalty of $1,000 a day would be assessed for each day such obstructions remained on the easement after the end of this 45-day period. Upon plaintiffs subsequent motion "to clarify, define and fix amount of the judgment”, the trial court amended its judgment to substitute liquidated damages in the amount of $1,000 a day for the penalty.
The Appellate Division affirmed the amended judgment insofar as it confirmed plaintiffs right to unimpeded use and possession of the easement but it struck the portion of it directing the award of $1,000 in damages for each day after the expiration of the grace period. On appeal to this court, plaintiff contests the Appellate Division’s order eliminating the award of liquidated damages and MASP cross-appeals, seeking a judgment in its favor determining that plaintiff, and its predecessor in interest, Penn Central, abandoned their claim to the easement.
There should be an affirmance. The evidence does not support a finding of abandonment and the damage award, entered prospectively for violations of the grace period, cannot be upheld under a theory of either liquidated or punitive damages.
The facts found by the trial court, and affirmed by the Appellate Division, are as follows. Plaintiffs easement was created on October 23, 1969 by a formal, written document titled "Grant and Release of Easements”, signed and acknowledged by Penn Central, Hunts Point and others. By this agreement, Penn Central released to Hunts Point an existing "Serpentine” right of way along the shoreline in exchange for a new easement providing Penn Central access to its Oak Point Yard in the Industrial Park from East 149th Street. In a collateral agreement executed December 17, 1969, Hunts Point agreed to pave the entire length of the new easement. (900 Wool worth Redevelopment Corporation succeeded to the interests of Hunts Point in the servient property and MASP is its lessee.) Notwithstanding these agreements, however, the easterly end of the easement has never been opened and, in fact, has been used continuously by Hunts Point, and then *39 MASP for storage of equipment, materials and junk. Consequently, Penn Central and its tenants have been forced to use a "dog-leg” path around the perimeter of MASP’s leasehold that crosses other property owned by Wool worth and the Coca Cola Company. The trial court found that plaintiff does not possess any legally enforceable right to the path and has been permitted to use it solely at the sufferance of the property owners.
Plaintiff acquired title to the easement from Penn Central’s trustees in bankruptcy in April 1976. At about the same time, Supreme Court decided a pending lawsuit involving Hunts Point, Penn Central and the Idaho Potato Packers Corporation (a lessee of Penn Central) and confirmed Penn Central’s right to unimpeded use of the easement. After acquiring title from Penn Central, plaintiff inspected the Oak Point Yard and discovered the continued obstruction of the easement by Hunts Point and the use of the "dog-leg” path as an alternative access route. In December 1979, prior to Woolworth’s acquisition of Hunts Point, MASP leased the servient property. In 1981 plaintiff demanded in writing that MASP vacate the easement and when MASP refused, it commenced this action.
We agree with the courts below that MASP failed to prove its affirmative defense that plaintiff and its predecessor in interest, Penn Central, had abandoned the easement. Although an easement created by grant may be lost by abandonment, an owner is under no obligation to make use of his property, and an abandonment does not result by nonuse alone (Gerbig v Zumpano, 7 NY2d 327, 331; Castle Assoc. v Schwartz, 63 AD2d 481, 487). It results only when there is a nonuse accompanied by an intention to abandon on the part of the owner (see, Snell v Levitt, 110 NY 595, 604 [quoting Washburn, Easements, at 661 ff (3d ed)]). As we noted almost 100 years ago: "Abandonment necessarily implies non-user, but non-user does not create abandonment no matter how long it continues. There must be found in the facts and circumstances connected with the non-user an intention on the part of the owner of the easement to give it up, but intention existing coupled with non-user will uphold a finding of abandonment.” (Welsh v Taylor, 134 NY 450, 457.)
A party relying upon another’s abandonment of an easement by grant must produce "clear and convincing proof of an intention to abandon it” (Hennessy v Murdock, 137 NY 317, *40 326; Castle Assoc. v Schwartz, supra, p 487). The acts relied upon must be unequivocal, and must clearly demonstrate the owner’s intention to permanently relinquish all rights to the easement (see, Gerbig v Zumpano, supra, p 331).
When judged by these rules, the facts found by the courts below support their conclusion that plaintiff did not intend to abandon its easement. The record establishes that after the grant Hunts Point and its successors repeatedly acknowledged plaintiff’s easement (indeed Hunts Point agreed to pave it for them) and in 1973 Penn Central joined in litigation with its lessee, Idaho Potato Packers Corporation which, among other relief, resulted in a judicial determination confirming Penn Central’s right to the easement. After the appurtenant property was sold to plaintiff, it asserted its rights and requested that MASP vacate the disputed easement. The dissenters at the Appellate Division suggested that bankrupt Penn Central’s agent, Nichols, had apparent authority to bind his employer and that he agreed to exchange the easement for the "dog-leg” easement. Those agreements were conditioned on court approval, however, and in related litigation in the United States District Court, the court found the acts of Nichols were void. Nor does plaintiff’s use of the "dog-leg” path evince an unequivocal intent to abandon the easement granted it. That right of way was valuable to plaintiff because it provided access to both plaintiff and its lessees, but an owner may hardly be presumed to have abandoned a legal access in favor of an alternative right of way existing only by sufferance.
The Appellate Division was also correct in reversing the award of liquidated damages assessed against MASP for failing to vacate the easement within the specified grace period. Liquidated damages constitute a sum which the parties to a contract contemplate should be paid to satisfy any loss or injury flowing from a breach of the contract (Truck Rent-A-Center v Puritan Farms 2nd, 41 NY2d 420, 423-424 [citing Wirth & Hamid Fair Booking v Wirth, 265 NY 214, 223]). They are appropriate, therefore, only in actions arising out of a contract where the amount fixed bears a reasonable proportion to the actual loss sustained through a breach (see, Truck Rent-A-Center v Puritan Farms 2nd, supra, pp 424-425). In the absence of any contractual provision between the parties, or any proof of actual damage sustained by plaintiff, the trial court should not have assessed liquidated damages against MASP.
*41 Nor was the trial court’s award of punitive damages appropriate. As a procedural matter, a prayer for equitable relief may support an award for such damages if malice is alleged and proved (I. H. P. Corp. v 210 Cent. Park S. Corp., 12 NY2d 329, 331-333; Bonham v Coe, 249 App Div 428, 439, affd 276 NY 540; O’Connor v Lempicky, 81 AD2d 860), and the fact that MASP might have been subject to contempt proceedings for failure to obey the trial court’s order does not necessarily foreclose such relief (see, 9 Fuchsberg, Encyclopedia of NY Law, Damages §61, at 49).* But even though there is no procedural bar to the award of punitive damages, they could only be awarded if MASP’s conduct was found to be malicious, vindictive, morally culpable, wanton or reckless (see, Reinah Dev. Corp. v Kaaterskill Hotel Corp., 59 NY2d 482, 487-488; I. H. P. Corp. v 210 Cent. Park S. Corp., 12 NY2d 329, 333-334, supra). Notwithstanding evidence in the record suggesting that the officers of MASP ignored prior court rulings not to obstruct plaintiff’s easement, there was no finding by the trial court that MASP’s conduct was malicious which would support its award.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Wachtler and Judges Meyer, Kaye, Alexander and Titone concur; Judge Hancock, Jr., taking no part.
Order affirmed, without costs.

 Nor can the $1,000 a day damages be deemed to be a fine imposed for civil contempt. Civil contempt has as its aim the vindication of a private right of a party to litigation, and any penalty imposed on the contemnor is designed to compensate the injured private party for the loss of, or interference with, that right (Matter of McCormick v Axelrod, 59 NY2d 574, 582-583). Where, as here, it has not been shown that actual damage has been sustained as a result of such contempt, any fine imposed is limited to "the complainant’s costs and expenses, and two hundred and fifty dollars in addition thereto” (Judiciary Law § 773).